the jury, and more particularly, there was sufficient evidence from which a reasonable jury could find that the contemplated act would be illegal on the day upon which it would have been performed.

For the foregoing reasons, although my analysis of the interpretation of § 28-320.02 differs from the majority, I concur.

———————————

James E. Robertson et al., appellants, v. Jacobs Cattle Company, a partnership, et al., appellees.

___ N.W.2d ___

Filed August 15, 2014.    No. S-13-860.

1.  **Partnerships: Accounting: Appeal and Error.** An action for a partnership dissolution and accounting between partners is one in equity and is reviewed de novo on the record.
2.  **Equity: Appeal and Error.** On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations. But when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.
3.  **Statutes.** Statutory interpretation presents a question of law.
4.  **Partnerships.** The interpretation of a partnership agreement presents a question of law.
5.  **Appeal and Error.** An appellate court reviews questions of law independently of the trial court's decision.

Appeal from the District Court for Valley County: Karin L. Noakes, Judge. Reversed and remanded with direction.

Patrick J. Nelson, of Law Office of Patrick J. Nelson, L.L.C., for appellants.

David A. Domina and Megan N. Mikolajczyk, of Domina Law Group, P.C., L.L.O., and Gregory G. Jensen for appellees.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Four of the partners in the Jacobs Cattle Company partnership sought dissolution and liquidation of the partnership. The remaining partners filed a cross-claim seeking judicial dissociation of the four partners instead of dissolution. The distinction between dissolution and dissociation is discussed later in this opinion. The district court dissociated the four partners and ordered the partnership to buy out their interests.

In a previous appeal,[1] we held that judicial dissociation was proper, but determined that the district court erred in calculating the proper distributions to buy out the dissociated partners. On remand, after an evidentiary hearing, the district court determined that the profit from the hypothetical capital gain should be credited to the partners' capital accounts, rather than their income accounts. Due to the account distributions required under the partnership agreement, crediting the capital gain to the dissociated partners' capital accounts results in a lower buyout amount than crediting the capital gain to the partners' income accounts. The dissociated partners now appeal the judgment on remand, arguing that the district court again erred in determining what they are owed by the partnership. We reverse, and remand with direction.

## FACTUAL BACKGROUND

Jacobs Cattle Company is a family-owned partnership in the farming and livestock business. The partnership was formally organized on January 1, 1979. Seven partners of the Jacobs Cattle Company—Dennis Jacobs, Duane Jacobs, Carolyn Sue Jacobs, James E. Robertson, Patricia Robertson, Ardith Jacobs as trustee of the Leonard Jacobs Family Trust, and Ardith Jacobs as trustee of the Ardith Jacobs Living Revocable Trust—entered into the operative partnership agreement on June 19, 1997.

The partnership agreement provides that each partner shall have an individual capital account and an individual income account. The capital accounts are to be proportional to the

---

[1] *Robertson v. Jacobs Cattle Co.*, 285 Neb. 859, 830 N.W.2d 191 (2013).

partners' contributions. Net profits and net losses are to be distributed to the partners' income accounts in proportion to the partners' managing votes. As per the partnership agreement, Ardith and Dennis are each entitled to two votes, while the other partners each have one vote. The partnership agreement provides that the meaning of "net profits" and "net losses" shall be determined by generally accepted accounting principles.

### Underlying Lawsuit

In July 2007, appellants—James, Patricia, Duane, and Carolyn Sue—sought dissolution and liquidation of the partnership. Appellees—the partnership, Ardith, and Dennis—filed an answer and counterclaim seeking dissociation of the four partners/appellants. After a bench trial, the district court dissociated the four partners and ordered the partnership to buy out their interests. The court determined the liquidated value of the partnership as of September 20, 2011, to be $5,212,015. Appellees filed a buyout proposal suggesting that each of the appellants be paid according to his or her capital account ownership, or 5.33 percent of the partnership's liquidated value. Appellants objected to appellees' buyout proposal and submitted an alternative buyout proposal requesting that each of the appellants be paid according to his or her income accounts, or 12.5 percent of the partnership's liquidated value. The district court refused to hear evidence on appellants' objections and ordered appellants to be paid 5.33 percent of the liquidated value.

### First Appeal

As discussed in our previous opinion in this case,[2] prior to adoption of the Uniform Partnership Act of 1998,[3] dissolution and winding up of an at-will partnership was required upon any partner's expressed will to dissolve the partnership.[4]

---

[2] See *Robertson, supra* note 1.

[3] Neb. Rev. Stat. §§ 67-401 to 67-467 (Reissue 2009).

[4] See, Neb. Rev. Stat. § 67-331 (Reissue 2003); *Shoemaker v. Shoemaker*, 275 Neb. 112, 745 N.W.2d 299 (2008).

The Uniform Partnership Act of 1998, however, sought to avoid mandatory dissolution, because the partnership was to be viewed as an entity distinct from its partners.[5] Under our Uniform Partnership Act of 1998, a partner who ceases to do business with the partnership may be dissociated while the partnership continues.[6]

In our previous opinion, we held that the district court did not err in determining that dissociation of appellants, rather than dissolution of the partnership, was the appropriate remedy in this case. We concluded, however, that the district court erred in its calculation of the buyout distributions in connection with the dissociation. We determined that because this was a dissociation, and not a dissolution, the buyout of the dissociated partners was governed by §§ 67-434(2) and 67-445(2).

In our previous opinion, we stated that under § 67-434(2), the buyout distributions were to be determined "based upon the assumption that the partnership assets, here the land, were sold on the date of dissociation, even though no actual sale occurs."[7] We further determined that "the capital gain which would be realized upon a hypothetical liquidation of the partnership's land on the date of dissociation, (as required by § 67-434(2)) would constitute 'profits' within the meaning of the phrase in § 67-445(2)."[8] Section 67-445(2) requires that "profits . . . that result from the liquidation of the partnership assets must be credited . . . to the partners' accounts."

We noted that there remained a question as to how such "profits" should be credited to the partners' accounts under the partnership agreement. Appellants contended that the profits should be distributed pursuant to paragraph 11 of the partnership agreement, which states that "net profits . . . as determined by generally accepted accounting principles" are to be distributed to the partners in certain percentages. We

---

[5] *Shoemaker, supra* note 4.

[6] See §§ 67-431 to 67-433.

[7] *Robertson, supra* note 1, 285 Neb. at 877, 830 N.W.2d at 205.

[8] *Id*. at 877, 830 N.W.2d at 206.

concluded that the district court erred in refusing to consider evidence regarding whether capital gains from the hypothetical sale of the land were "net profits . . . as determined by generally accepted accounting principles" and therefore distributable to the partners based on paragraph 11 of the partnership agreement. We therefore remanded the cause "with directions for the court to reconsider the buyout calculations after receiving appellants' evidence on this issue."[9]

### Hearing on Remand

On remand, the district court received evidence, including expert testimony offered by both appellants and appellees. The district court determined that the capital gain did not constitute "net profits" under the partnership agreement and held that the gain should therefore be credited to the partners' accounts in accordance with their capital percentages, rather than the income percentages pursuant to paragraph 11 of the partnership agreement. Because the dissociated partners' capital percentages were less than their income percentages—5.33 percent as opposed to 12.5 percent—this resulted in a lower buyout distribution to the dissociated partners.

The district court based its decision on the testimony of appellees' experts, which the court stated it found to be more rational. On direct examination, appellees' first expert testified that under generally accepted accounting principles, one "would not recognize any gain or income until an actual event of a sale [of property]," and that therefore, the buyout distributions should be determined based on the dissociated partners' capital percentages. On cross-examination, the expert reiterated that his analysis was based on the fact that no actual sale of partnership property had occurred, and it was his opinion that "until and unless there is an actual sale there is no profit." Appellees' second expert testified that he had listened to the testimony of the first expert and that his answers to the questions would have been substantially the same.

---

[9] *Id.* at 878, 830 N.W.2d at 206.

## ASSIGNMENTS OF ERROR

Appellants assert, restated and summarized, that the district court erred in determining that the capital gain profit from a hypothetical sale of the partnership's land should be credited to the partners' capital accounts.

## STANDARD OF REVIEW

[1,2] An action for a partnership dissolution and accounting between partners is one in equity and is reviewed de novo on the record.[10] On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.[11] But when credible evidence is in conflict on material issues of fact, we consider and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.[12]

[3-5] Statutory interpretation presents a question of law.[13] The interpretation of a partnership agreement presents a question of law.[14] An appellate court reviews questions of law independently of the trial court's decision.[15]

## ANALYSIS

Appellants assign eight errors of the district court, but they can be summarized as asserting that the district court erred in calculating the distributions required for the buyout.

We conclude that the district court erred in finding that the hypothetical capital gain did not constitute "net profits" under the partnership agreement. The district court erred when it relied on appellees' experts' testimony, because that testimony was based on the fact that there was not an actual sale of the partnership property. As set forth in our prior opinion, under § 67-434, the buyout amount was to be calculated by assuming

---

[10] *Robertson, supra* note 1; *Shoemaker, supra* note 4.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *McKinney v. Okoye*, 282 Neb. 880, 806 N.W.2d 571 (2011).

that the partnership assets were liquidated on the date of dissociation and that the profits from such liquidation were credited to the partners' accounts.

The question on remand in this case was whether, assuming the land was sold on the date of dissociation, the capital gain that would have resulted from such a sale was "net profit" as determined by generally accepted accounting principles and therefore would have been distributed in accordance with paragraph 11 of the partnership agreement. Appellees' experts' testimony rejected this premise by stating that no gain or income would have been recognized, because no actual sale took place. Appellees' experts reasoned that because there was no actual sale, and therefore no income, the distribution should be based on capital percentages rather than income percentages. However, this conclusion was based on the erroneous premise that no actual sale occurred. Appellees' experts' analysis ignored the statutory requirement that the buyout distributions be calculated based on the assumption that the assets had been sold and the resulting profits distributed to the partners.

Because we conclude that the district court erred when it relied on appellees' experts' testimony, we consider whether appellants' expert's testimony provided a proper basis to calculate the buyout distributions on remand. We conclude that it does.

Appellants' expert witness testified that under generally accepted accounting principles, the term "net profits" as used in paragraph 11 of the partnership agreement would include capital gain from the sale of land. Based on this evidence, we find that capital gain from the hypothetical sale of land should be distributed to the partners in accordance with paragraph 11 governing the distribution of "net profits."

We note that appellants' expert also testified regarding concepts such as "derecognition" and "full accrual" as they relate to whether and when profit is recognized in full when real estate is sold. Appellees and their experts criticized such testimony in various respects, particularly on the basis that this partnership uses the cash method of accounting rather than the accrual method of accounting. However, the testimony

regarding whether and when profit from the sale of land was to be recognized was not necessary to the determination of the issue for which we remanded this cause.

Based on our prior opinion and the governing partnership statutes cited therein, the buyout distributions were to be calculated based on the assumption that the partnership assets had been liquidated and the profits from such liquidation were credited to the partners. "Liquidated" in this sense generally means converted into cash.[16] Therefore, the premise upon which the buyout amount was to be calculated assumed that the sale had been completed and that the capital gain was to be recognized and distributed on the date of dissociation. Thus, for purposes of calculating the buyout distributions, there was not a question as to whether the sale had been completed and whether a capital gain was to be recognized.

The only question on remand was how the capital gain was to be distributed among the partners. Specifically, the question was whether the capital gain was to be included in "net profits" and distributed pursuant to paragraph 11. The testimony regarding derecognition and full accrual was not necessary to deciding that question and does not affect our determination that appellants' expert's testimony supported appellants' contention that capital gain from the sale of land should have been included in "net profits" distributable pursuant to paragraph 11.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the district court and remand the cause with direction to enter an order which calculates a buyout distribution by adding 12½ percent of the profit received from a hypothetical sale of the partnership's assets on September 20, 2011, to the value of each dissociated partner's capital account.

REVERSED AND REMANDED WITH DIRECTION.

WRIGHT, J., not participating.

---

[16] Black's Law Dictionary 1072 (10th ed. 2014).